Todd D. Weiler, #7671
  Todd.Weiler@chrisjen.com
Zachary C. Myers, #15302
  Zachary.Myers@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: 801-323-5000
*Attorneys for Plaintiff*

> **If you do not respond to this document within applicable time limits, judgment could be entered against you as requested.**

---

### THIRD JUDICIAL DISTRICT COURT IN AND FOR SALT LAKE CITY, SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| JENNIE JONSSON,<br><br>     Plaintiff,<br><br>v.<br><br>ERIC STOTT,<br>OFFICE OF ADMINISTRATIVE HEARINGS, UTAH DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>     Defendant. | **COMPLAINT**<br>**(Jury Demanded)**<br>**(Tier 3)**<br><br>Civil No.<br><br>Judge |

Plaintiff, Jennie Jonsson, hereby contends, complains, and alleges against Defendants, Eric Stott and Office of Administrative Hearings, Utah Department of Health and Human Services, as follows:

### INTRODUCTION

Ms. Jonsson, a former Administrative Law Judge ("ALJ") at the Office of Administrative Hearings, Utah Department of Health and Human Services ("DHHS"), was fired by her supervisor, Eric Stott, because she was unwilling to ignore or change the statutory burden of proof applicable in an administrative hearing or show bias against alleged perpetrators.

In May 2023, Ms. Jonsson drafted an Order for a case assigned to her, in which she found that the Petitioner, the Division of Child and Family Services ("DCFS") had not met its statutory burden of proof. She emailed the draft Order to her supervisor, Mr. Stott, and another ALJ, Curtis Wade, for peer review.

Mr. Stott replied, "Are you open writing this the other way?" Mr. Stott further explained that the Order would be a departure from DHHS's history of believing victims unless there is good evidence to show they are lying. Ms. Jonsson was concerned that this flipped the statutory burden of proof, forcing the Respondents to prove their innocence. See Utah Code § 80-2-707(5)(a) (establishing the DCFS's burden of proof in administrative hearings).

Mr. Stott reassigned the case to himself and reversed Ms. Jonsson's determination. Mr. Stott also discussed the case with Mr. Wade, indicating to him that Ms. Jonsson had decided the case incorrectly. From that time forward, Ms. Jonsson noticed she was treated differently by Mr. Stott and Mr. Wade, including greater scrutiny of her orders.

Ms. Jonsson asked Mr. Stott and Mr. Stott's superior, Amanda Slater, for a meeting to discuss her concerns. A meeting was scheduled for June 28, 2023. At the meeting, Mr. Stott said, "I know you have some things you wanted to talk about today, but we've decided to terminate your probation and end the employment relationship." Ms. Jonsson was given a termination letter. The only basis for termination stated in the letter was, "non-compliance with the policies and standards related to performance and conduct." The only "policy" that Ms. Jonsson violated was Mr. Stott's unofficial, unwritten "policy" of giving alleged victims an automatic assumption

of credibility unless respondents brought proof to demonstrate that the alleged victims were lying—i.e. flipping the burden of proof onto respondents to prove their innocence.

Mr. Stott retaliated against Ms. Jonsson and fired her because she communicated in good faith a "violation of statute" or an "abuse of authority," in violation of Utah Code § 67-21-3(1)(a). Additionally, Mr. Stott retaliated against Ms. Jonsson and fired her because she "objected to or refused to carry out a directive that [she] reasonably believe[d] violates a law of this state," in violation of Utah Code § 67-21-3(3).

## PARTIES

1.      At all times relevant to this action, Plaintiff, Jennie Jonsson, was a resident of Salt Lake County, Utah.

2.      Defendant, Office of Administrative Hearings ("OAH"), Utah Department of Health and Human Services ("DHHS") is an agency of the Utah state government, located in Salt Lake City, Utah.

3.      At all times relevant to this action, Eric Stott was acting within the course and scope of his employment at OAH, DHHS.

## JURISDICTION, VENUE AND TIER

4.      This Court has jurisdiction of this action pursuant to Utah Code Ann. §§ 67-21-4(2) and 78A-5-102(1), because the alleged violation occurred in Salt Lake County.

5.      Venue is proper in this Court pursuant to Utah Code Ann. §§ 78B-3-307 and 67-21-4(2), because the cause of action arose in this County.

6.      Pursuant to Utah Rule of Civil Procedure 26(c)(5), this is a Tier 3 action, because the alleged damages are $300,000 or more.

## GENERAL ALLEGATIONS

7.      At all relevant times, Ms. Jonsson was an administrative law judge ("ALJ") employed by the Office of Administrative Hearings (the "OAH") within the Department of Health & Human Services ("DHHS").

8.      At all relevant times, Ms. Jonsson was a probationary employee, meaning that she had been employed in her specific position for less than one year.

9.      Ms. Jonsson has been employed by the State of Utah as an ALJ or hearing officer since 2009, except for a brief period of about three months, when she tried private practice.

10.     Relevant here, the ALJs at DHHS hear cases arising out of investigations by the Division of Child and Family Services ("DCFS"). When DCFS supports a finding of abuse or neglect against an individual, that individual (or respondent) may challenge the finding before an ALJ. If the supported finding is as to sexual abuse, and if the respondent is a minor, that case may be handled in the administrative forum.

11.     On May 16, 2023, Ms. Jonsson completed an order in a sexual abuse case (the "Order"). Ms. Jonsson determined to overturn the supported finding. In brief, Ms. Jonsson's analysis came down to the fact that, given the evidence provided, it was a he-said/she-said type of case. Both the alleged victim and the alleged perpetrator presented in a manner that appeared credible, and DCFS provided no evidence or argument from which Ms. Jonsson could conclude

that the alleged perpetrator was less credible than was the alleged victim. Therefore, Ms. Jonsson

held DCFS to its burden of proof and ruled that it had failed to make its case.

12.     The OAH has a policy requiring its ALJs to delay issuing an order until another

ALJ has completed peer review.

13.     On May 16, 2023, Ms. Jonsson let her supervisor, Mr. Stott, and another ALJ,

Curtis Wade know that the Order was ready for peer review.

14.     On June 8, 2023, Mr. Stott asked Ms. Jonsson, if she was open to writing the

Order the other way. Mr. Stott further explained that the Order would be a big departure from the

OAH history of believing victims unless there is good evidence to show they are lying.

15.     On June 8, 2023, Ms. Jonsson stated that she was not open to upholding the

finding and explained why she did not find the alleged victim to be more credible than the

alleged perpetrator. Ms. Jonsson pushed back on the alleged policy of believing the victim over

the Respondent in a situation where both seem credible and there is no evidence that either is

lying. She explained that such a policy would flip the burden of proof to the Respondent, which

is not appropriate.

16.     **Utah Code § 80-2-707(5)(a)** states: "in an adjudicative proceeding held under

this section, the [Division of Child and Family Services] has the burden of proving, by a

preponderance of the evidence, that abuse, neglect, or dependency occurred and that the alleged

perpetrator is substantially responsible for the abuse or neglect that occurred." This was DCFS's

burden of proof in the case before Ms. Jonsson.

17.     Mr. Stott and Ms. Jonsson continued to communicate with one another by email,

with analysis to support their conflicting positions. On June 12, 2023, Mr. Stott stated that the

OAH would continue under the same philosophy it had employed historically (i.e., that credible victim disclosure should be given more weight than credible respondent testimony). Mr. Stott asserted that the policy did not shift the burden of proof, but instead was a calculation of many factors and varies case by case. He claimed that the approach also came down to a more likely than not analysis (e.g., based on the victim's disclosure, and despite Respondent's denial, Respondent more likely than not committed an act of sexual abuse). He asked if Ms. Jonsson was willing to reconsider her decision.

18.     On June 13, 2023, Ms. Jonsson responded that she did not agree with Mr. Stott, but acknowledged that, as her supervisor, he got the final say. She stated that she would not be happy if he changed her ruling, but pledged that she wouldn't make a fuss.

19.     On June 14, 2023, Ms. Jonsson stated that she had real concerns regarding the alleged policy to always believe victims, and asked Mr. Stott if he would be willing to put it into an administrative rule. Mr. Stott replied that it would depend on how it was written. Ms. Jonsson responded that she thought it was bias, and would be hard to defend in a CLE setting among other lawyers.

20.     **Utah Admin Code R477-101-7(1)** states: "ALJs shall comply with the Model Code of Judicial Conduct for State Administrative Law Judges, National Association of Administrative Law Judges ["NAALJ"]." The NAALJ Model Code of Judicial Conduct is attached as Exhibit 1. It states the following:

> **Canon 3**
> **A State Administrative Law Judge Shall Perform the Duties of the Office Impartially and Diligently**
> …
> B. ADMINISTRATIVE RESPONSIBILITIES

1. A state administrative law judge shall diligently discharge assigned administrative responsibilities without bias or prejudice, maintain professional competence in judicial administration and facilitate the performance of the administrative responsibilities of other state administrative law judges.

21.     On June 15, 2023, Mr. Stott disqualified Ms. Jonsson as the ALJ on the case, assigned himself as the ALJ, and wrote an order upholding DCFS's supported finding of sexual abuse. In addition, Mr. Stott asked Ms. Jonsson to proofread his order and invited her to adopt it and issue it under her name. Mr. Stott stated his belief that two seemingly credible conflicting versions of an incident can be weighed differently based on the factors he had previously outlined; specifically, perceived obstacles/hurdles, perceived motives, likelihoods, statistics, and Mr. Stott's own personal experience. In addition, Mr. Stott insisted that, if the victim appears to be credible, then the perpetrator cannot also be credible. Mr. Stott invited Ms. Jonsson to issue his version of the Order under her name.

22.     Ms. Jonsson responded that she did not want Mr. Stott's Order issued under her name, explaining that she was not willing to go outside of the hearing and outside of the evidence to create a basis for finding the alleged victim to be credible. In addition, Ms. Jonsson stated that she was very unhappy about how the situation had worked out.

23.     On June 16, 2023, Ms. Jonsson requested that she not be assigned to adjudicate sex abuse cases, specifying that she could not go into a hearing with the biased mindset that the alleged victim is automatically to be considered more credible than the alleged perpetrator.

24.     Ms. Jonsson also stated that she would start looking for another job. At this point, Ms. Jonsson planned to move on when an appropriate opportunity arose, and she applied for a job with the Attorney General's office.

25.     After June 15, 2023, Ms. Jonsson noticed that there seemed to be a change in the way Mr. Wade was handling peer review of her orders. In the past, when Mr. Wade peer reviewed one of Ms. Jonsson's orders, he would email her to let her know he was finished. He would sometimes state in the email why he agreed or why he considered it a close call. And he would also state that he had corrected some typos or made some suggestions in redline. Sometimes Mr. Wade included Mr. Stott in his emails, and sometimes he did not. After June 15, 2023, however, Mr. Wade started emailing Mr. Stott separately (with a cc to Ms. Jonsson) to report whether he agreed with Ms. Jonsson's order, and to specify the reasons why. Ms. Jonsson perceived this as heightened scrutiny connected to the disagreement she and Mr. Stott had had over the Order. Ms. Jonsson became concerned that Mr. Stott had told Mr. Wade to scrutinize her decisions more carefully.

26.     On June 26, 2023, Ms. Jonsson contacted Mr. Stott and Mr. Stott's superior, Amanda Slater, to ask that Ms. Slater or another member of administration be present at her next monthly one-on-one with Mr. Stott. At the time, Ms. Jonsson understood that the one-on-one was scheduled for July 5, 2023. Mr. Stott replied to explain that the July 5, 2023, notification Ms. Jonsson had received was for something else, and that he had not yet scheduled the July one-on-one.

27.     In preparation to speak with someone from administration, Ms. Jonsson contacted Mr. Wade to ask if Mr. Stott had spoken to him about Ms. Jonsson's orders and instructed him to report back as to whether Ms. Jonsson had ruled correctly.

28.     Mr. Wade refused to answer Ms. Jonsson's questions. Instead, he replied with a long explanation as to the history and purpose of peer review.

29.     Ms. Jonsson pressed Mr. Wade as to whether Mr. Stott had recently communicated to him regarding peer review of her orders. Mr. Wade again refused to answer the question.

30.     On June 27, 2023, Ms. Jonsson emailed Mr. Stott and Ms. Slater, stating she wanted to schedule a meeting right away, rather than waiting for the next one-on-one.  She said she could meet in person or on Google Meet.  Mr. Stott then scheduled the meeting for June 28, 2023, at 7:30 a.m.

31.     At the beginning of the meeting, which was scheduled at Ms. Jonsson's request for an opportunity to express her concerns, Mr. Stott stated that although he knew that Ms. Jonsson had some things that she wanted to discuss, the decision had been made to terminate her probation and end the employment relationship. At that point, Ms. Jonsson started recording the meeting. She tried to express her concerns, emphasizing that she had grounds for a whistleblower action, but Mr. Stott and Ms. Slater kept saying that none of Ms. Jonsson's concerns mattered because the decision to terminate her had already been made. At one point when Ms. Jonsson insisted that Mr. Stott retaliated against her by criticizing the Order to another ALJ, Ms. Slater asked, "And did you report this to HR?" Ms. Jonsson replied, "That's what I'm doing right now." Ms. Jonsson refused to accept the termination letter and asked that she be placed on administrative leave while her concerns and complaint were investigated.

32.     Around 4:15 p.m., Ms. Jonsson received an email from Tami Hart, HR Specialist with DHHS, with a termination letter attached. The termination letter is attached here as Exhibit 2.

33.     The termination letter states: "Your non-compliance with policies and standards related to performance and conduct contributed to this decision."

34.     Prior to the conflict over the Order, Mr. Stott had praised Mr. Jonsson's work product and her timeliness as an ALJ.  He said that she was the best writer they had in the office.

**FIRST CAUSE OF ACTION**
**(Violation of Utah Protection of Public Employees Act,**
**Utah Code Ann. (sec) 67-21-1, *et seq.*)**

35.     Plaintiff incorporates by reference the allegations previously set forth in this Complaint.

36.     Defendants Mr. Stott and OAH, DHHS are an "employer" under the Utah Protection of Public Employees Act. *See* Utah Code Ann. § 67-21-2(5).

37.     Defendant, Mr. Stott, in violation of Utah Code § 67-21-3(1)(a), retaliated against Ms. Jonsson by disqualifying her from a case or cases, criticizing her work product to her peer, increasing scrutiny of her work, creating a hostile work environment, and then firing Ms. Jonsson because she communicated in good faith a "violation of statute" or "abuse of authority."

38.     Mr. Stott, in violation of Utah Code § 67-21-3(3), retaliated against Ms. Jonsson by disqualifying her from a case or cases, criticizing her work product to her peer, increasing scrutiny of her work, creating a hostile work environment, and then firing Ms. Jonsson because she "objected to or refused to carry out a directive that [she] reasonably believe[d] violates a law of this state."

39.     The basis for termination provided by Defendants was pretextual.

40.     At all relevant times, Mr. Stott was an employee of Defendant, OAH, DHHS, which, therefore, is liable for his actions.

41.     As a direct and proximate result of Defendants' actions, Ms. Jonsson has incurred damages in an amount to be determined at trial.

42.     Pursuant to Utah Code Ann. § 67-21-5, Ms. Jonsson is entitled to reinstatement of her employment at the same level, payment of back wages, full reinstatement of fringe benefits and seniority rights, and consequential damages (such as future lost earnings and general damages for emotional suffering).

43.     Defendant, Mr. Stott's wrongful conduct was willful and malicious or manifested "a knowing and reckless indifference toward, and a disregard of, the rights of" Ms. Jonsson; therefore, Ms. Jonsson is entitled to an award of punitive damages. *See* Utah Code Ann. §§ 78B-8-201(1)(a), 63G-7-603(1)(b).

### SECOND CAUSE OF ACTION
**(Deprivation of Plaintiff's Liberty Interest Without Due Process in Violation of 42 U.S.C. § 1983)**

70.    Plaintiff re-alleges and incorporates by reference all paragraphs set forth above.

71.    Ms. Jonsson had a liberty interest in her good name and reputation.

72.    Defendants infringed upon this liberty interest by impugning the good name, reputation, honor, and integrity of Ms. Jonsson by using false allegations of unsatisfactory job performance and failure to meet OAH, DHHS's standards to convince other individuals at OAH, DHHS to terminate her employment.

73.    Defendants' allegations of Ms. Jonsson's unsatisfactory job performance imposed a stigma on her professional reputation.

74.    As a result of Defendants' wrongful conduct, Ms. Jonsson's professional reputation has been adversely impacted such that it has foreclosed other employment opportunities. In fact,

11

despite being well qualified and applying for numerous positions at state agencies, Ms. Jonsson has been unable to secure a comparable position.

75.   As a result of Defendants' wrongful conduct, Ms. Jonsson has suffered and will continue to suffer economic and non-economic losses, which she is entitled to recover.

76.   OAH, DHHS's deprivation of Ms. Jonsson's rights to due process caused her significant harm for which she is entitled to injunctive relief to remedy.

77.   Defendants' actions described above were done with malice and/or reckless disregard to Ms. Jonsson's federally protected right to due process. Due to the willful and malicious nature of the deprivation of rights, she is entitled to an award of punitive damages in an amount sufficient to deter the defendants from engaging in retaliatory conduct in the future.

78.   Ms. Jonsson is also entitled to recover all her attorneys' fees and costs of this action, and any other relief as this court deems appropriate.

### DAMAGES

79.   Ms. Jonsson alleges Defendants' actions and inactions have caused her various losses, injuries and other damages, including lost wages, lost benefits, financial stress, damages to her health, damages to her employability and emotional distress.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against the Defendants as follows:

1.   For non-economic damages in an amount to be proven at the trial of this matter.

2.   For special damages in an amount to be proven at trial.

3.   For Plaintiffs' costs and expenses of litigation incurred herein.

4.      For prejudgment and post-judgment interest as allowed by law until the judgment

is paid in full.

6.      For such other equitable and further relief as the court deems just and equitable

under the circumstances.

7.      For punitive damages against Defendant Eric Stott in an amount to be proven at

trial.

8.      For attorney fees incurred in this matter.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury and submit to the Court the statutory jury fee.

DATED September 25, 2023.

CHRISTENSEN & JENSEN, P.C.

_____

Zachary C. Myers
Todd D. Weiler
*Attorneys for Plaintiff*

Plaintiff's Address:
Jennie Jonsson
c/o Zachary C. Myers, #15302
    Zachary.Myers@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111

# EXHIBIT 1

# MODEL CODE OF JUDICIAL CONDUCT FOR
## STATE ADMINISTRATIVE LAW JUDGES©
### Board of Governors[*]
## NATIONAL ASSOCIATION OF ADMINISTRATIVE LAW JUDICIARY

## PREAMBLE

Our state administrative legal system is based on the principle that an independent, fair and competent administrative judiciary will interpret and apply the laws that govern consistent with American concepts of justice. Intrinsic to all sections of this Code are the precepts that state administrative law judges, individually and collectively, must respect and honor their office as a public trust and strive to enhance and maintain confidence in our legal system. The state administrative law judge decides questions of fact and law for the resolution of disputes and is a highly visible symbol of government under the rule of law.

This Code of Judicial Conduct for State Administrative Law Judges is intended to establish standards for ethical conduct. The Canons and Sections contained in this code are rules of reason. They should be applied consistent with constitutional requirements, statutes, administrative rules and decisional law and in the context of all relevant circumstances. The Code is to be construed so as to not impinge on the essential independence of the state administrative law judge in making judicial decisions.

The Code of Judicial Conduct for State Administrative Law Judges is not intended as an exhaustive guide for the conduct of state administrative law judges. They should also be governed in their official judicial and personal conduct by general ethical standards. The Code is intended, however, to state basic standards which should govern the conduct of all judges and to provide guidance to assist such judges in establishing and maintaining high standards of judicial and personal conduct.

Except where modified, this Code follows the language of the American Bar Association Model Code of Judicial Conduct for Federal Administrative Law Judges. This Code is also based upon the American Bar Association Model Code of Judicial Conduct (1990). The American Bar Association's codes are copyrighted by the American Bar Association and are used with permission.

## CANON 1

### A State Administrative Law Judge Shall Uphold the Integrity and Independence of the Administrative Judiciary

An independent and honorable administrative judiciary is indispensable to justice in our society. A state administrative law judge shall participate in establishing, maintaining and enforcing high standards of conduct and shall personally observe those standards of conduct so that the integrity and independence of the administrative judiciary will be

---

[**] Adopted November 1993

preserved. The provisions of this Code should be construed and applied to further that objective.

## CANON 2

### A State Administrative Law Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities

A. A state administrative law judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the administrative judiciary.

B. A state administrative law judge shall not allow family, social, political or other relationships to influence judicial conduct or judgment. A judge shall not lend the prestige of the office to advance the private interests of the judge or others, nor convey or permit others to convey the impression that they are in a special position of influence. A judge shall not testify voluntarily as a character witness.

C. A state administrative law judge shall not hold membership in any organization that practices invidious discrimination on the basis of race, sex, religion or national origin.

## CANON 3

### A State Administrative Law Judge Shall Perform the Duties of the Office Impartially and Diligently

The judicial duties of a state administrative law judge take precedence over all other activities. Judicial duties include all the duties of the office prescribed by law. In the performance of these duties, the following standards apply:

A. ADJUDICATIVE RESPONSIBILITIES

1. A state administrative law judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor or fear of criticism.

2. A state administrative law judge shall maintain order and decorum in proceedings.

3. A state administrative law judge shall be patient, dignified, and courteous to litigants, witnesses, lawyers and others with whom the judge deals in an official capacity and shall require similar conduct of lawyers or other representatives, staff members and others subject to the judge's direction and control.

4. A state administrative law judge shall accord to all persons who are legally interested in a proceeding, or their representatives, full right to be heard according to law. A state administrative law judge shall not initiate, permit or consider ex parte communications or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:

a. Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not

deal with substantive matters or issues on the merits are authorized; provided:

> i. the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and

> ii. the judge makes provisions promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.

b. A judge may obtain the advice of a disinterested expert on the law applicable to the proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

c. A judge may consult other judges and support personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities.

d. A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to mediate or settle matters pending before the judge.

e. A judge may initiate or consider any ex parte communications when expressly authorized by law to do so.

f. Decisions of a state administrative law judge shall be based exclusively on evidence in the record of the proceeding and material that has been officially noticed.

5. A state administrative law judge shall dispose of all judicial matters promptly, officially and fairly.

6. A state administrative law judge should prohibit broadcasting, televising, recording or photographing in hearing rooms and areas immediately adjacent to the hearing rooms during hearings or recesses between hearings, except that under rules prescribed by an appropriate authority, a judge may authorize broadcasting, televising, recording and photographing of proceedings in hearing rooms and areas immediately adjacent thereto consistent with the right of the parties to a fair hearing and subject to express conditions, limitations and guidelines which allow such coverage in a manner that will be unobtrusive, will not distract the hearing participants and will not otherwise interfere with the administration of justice.

7. A state administrative law judge shall require participants in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, against parties, witnesses, counsel or others. This Section does not preclude legitimate advocacy when race, sex, religion, national origin, disability, age, sexual

orientation or socioeconomic status, or other similar factors, are issues in the proceeding.

8. A state administrative law judge shall not, while a proceeding is pending or impending, make any public comment that might reasonably be expected to affect its outcome or impair its fairness or make any nonpublic comment that might substantially interfere with a fair hearing. The judge shall require similar abstention on the part of agency personnel subject to the judge's direction and control. This Section does not prohibit state administrative law judges from making public statements in the course of their official duties or from explaining for public information the procedures of the agency. This Section does not apply to proceedings in which the judge is a litigant in a personal capacity.

9. A state administrative law judge shall not disclose or use, for any purpose unrelated to judicial duties, information acquired in a judicial capacity that by law is not available to the general public.

10. A state administrative law judge should not be subject to the authority, direction or discretion of one who has served as investigator, prosecutor or advocate in a proceeding before the judge or in its pre-adjudicative stage.

B. ADMINISTRATIVE RESPONSIBILITIES

1. A state administrative law judge shall diligently discharge assigned administrative responsibilities without bias or prejudice, maintain professional competence in judicial administration and facilitate the performance of the administrative responsibilities of other state administrative law judges.

2. A state administrative law judge shall require staff and other persons subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge.

3. A state administrative law judge shall take appropriate action or initiate appropriate disciplinary measures against a state administrative law judge, lawyer, representative or others for unprofessional conduct of which the judge may become aware.

C. DISQUALIFICATION

1. A state administrative law judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

a. the state administrative law judge has a personal bias or prejudice concerning a party or a party's lawyer or other representative involved in the proceeding;

b. the state administrative law judge served as lawyer or representative in the matter in controversy, or a lawyer with whom the judge practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it.

4

c. the state administrative law judge has served in other governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

d. the state administrative law judge, individually or as a fiduciary, or the judge's spouse or minor child residing in the judge's household, has a more than de minimis financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

e. the state administrative law judge or the judge's spouse or a person within the third degree of relationship to either of them or the spouse of such a person:

> (i) is a party to the proceeding, or an officer, director or trustee of a party;

> (ii) is acting as a lawyer or representative in the proceeding.

> (iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

> (iv) is to the judge's knowledge likely to be a material witness in the proceeding.

2. State administrative law judges should be aware of their personal and fiduciary financial interests, and make a reasonable effort to keep informed about the personal financial interests of their spouse and minor children residing in the judges' households.

3. For the purposes of this section, the following words or phrases shall have the meaning indicated:

a. the degree of relationship is calculated according to the civil law system;

b. "fiduciary" includes such relationships as executor, administrator, trustee and guardian;

c. "financial interest" means ownership of more than a de minimis legal or equitable interest, however small, or a relationship as director, advisor or other active participant in the affairs of a party, except that:

> (i) ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the state administrative law judge participates in the management of the fund;

> (ii) an office in an educational, religious, charitable, fraternal or civic organization is not a "financial interest" in securities held by the organization;

(iii) the proprietary interest of a policyholder in a mutual insurance company or a depositor in a mutual savings association or a similar proprietary interest is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

d. "proceeding" includes pre-hearing or other stages of litigation.

D. REMITTAL OF DISQUALIFICATION

A state administrative law judge disqualified by the means of Canon 3 C. may, instead of withdrawing from the proceeding, disclose on the record the basis of the disqualification. If, following disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties and lawyers or representatives, independently of the judge's participation, all agree that the judge should not be disqualified and the judge is willing, the state administrative law judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding.

## CANON 4

**A State Administrative Law Judge May Engage in Activities to Improve the Law, the Legal System and the Administration of Justice**

A state administrative law judge, subject to the proper performance of judicial duties, may engage in the following quasi-judicial activities, if in doing so doubt is not cast on the capacity to decide impartially any issue that may come before the judge:

A. Speak, write, lecture, teach and participate in other activities concerning the law, the legal system and the administration of justice.

B. May appear at a hearing before an executive or legislative body or official and may otherwise consult with an executive or legislative body or official, unless otherwise prohibited by law.

C. May serve as a member, officer or director of an organization or governmental agency devoted to the improvement of the law, the legal system or the administration of justice. A state administrative law judge may assist such an organization in raising funds and may participate in their management and investment, but should not personally participate in public fund raising activities. A judge may make recommendations to public and private fund-granting agencies on projects and programs concerning the law, the legal system and the administration of justice.

As a judicial officer and person specifically learned in the law, a state administrative law judge is in a unique position to contribute to the improvement of the law, the legal system and the administration of justice, including revision of substantive and procedural law. To the extent that time permits, a judge is

encouraged to do so, either independently or through a bar association, judicial association or other organization dedicated to the improvement of the law.

Extra-judicial activities are governed by Canon 5.

## CANON 5

**A State Administrative Law Judge Shall Regulate the Judge's Extra-Judicial Activities to Minimize the Risk of Conflict with Judicial Duties**

### A. EXTRA-JUDICIAL ACTIVITIES IN GENERAL

A state administrative law judge shall conduct all of the judge's extra-judicial activities so that they do not:

1. cast reasonable doubt on the judge's capacity to act impartially as a judge;

2. demean the judge's office; or

3. interfere with the proper performance of the judge's duties.

### B. AVOCATIONAL ACTIVITIES

A state administrative law judge may write, lecture, teach and speak on non-legal subjects and engage in the arts, sports and other social and recreational activities.

### C. CIVIC AND CHARITABLE ACTIVITIES

A state administrative law judge may participate in civic and charitable activities that do not reflect adversely upon impartiality or interfere with the performance of judicial duties. A judge may serve as an officer, director, trustee or advisor of an educational, religious, charitable, fraternal or civic organization not conducted for the economic or political advantage of its members, subject to the following limitations:

1. A state administrative law judge should not serve if it is likely that the organization will be engaged in proceedings that would ordinarily come before the judge or will be regularly engaged in adversary proceedings before any agency in which the judge serves.

2. A state administrative law judge should not use or permit the use of the prestige of the judge's office for the purpose of soliciting funds for any educational, religious, charitable, fraternal or civic organization, but the judge may be listed as an officer, director or trustee of such an organization. The judge should not be a speaker or the guest of honor at an organization's fund raising events, but may attend such events.

### D. FINANCIAL ACTIVITIES

1. A state administrative law judge shall refrain from financial and business dealings that tend to reflect adversely on impartiality, interfere with the proper performance of judicial duties, exploit the judge's official position or involve the judge in frequent transactions with lawyers or persons likely to come before the agency in which the judge serves.

7

2. Subject to the requirements of subsection (1), a state administrative law judge may hold and manage personal investments, including real estate, and engage in other remunerative activity.

3. A state administrative law judge shall manage the judge's investments and other financial interests to minimize the number of cases in which the judge is disqualified. As soon as judges can do so without serious financial detriment, judges shall divest themselves of investments and other financial interests that might require frequent disqualification.

4. Neither a state administrative law judge nor a member of the family residing in the judge's household should accept a gift, bequest, favor or loan from anyone except as follows:

> a. A state administrative law judge may accept a gift incident to a public testimonial to the judge, books supplied by publishers on a complimentary basis for official use, or an invitation to the judge and the judge's spouse to attend a function or activity devoted to the improvement of the law, the legal system or the administration of justice.

> b. A state administrative law judge or a member of the family residing in the household may accept ordinary social hospitality; a gift, bequest, favor or loan from a relative or close personal friend; a wedding or engagement gift; a loan from a lending institution in its regular course of business on the same terms generally available to persons who are not administrative law judges; or a scholarship or fellowship awarded on the same terms applied to other applicants.

> c. A state administrative law judge or a member of the family residing in the household may accept any other gift, bequest, favor or loan only if the donor is not a party or other person whose interests have come or are likely to come before the judge, or the gift is otherwise consistent with relevant agency rules and is reported to the extent required by such rules and other applicable laws.

5. For purposes of this section "member of the family residing in the household" means any relative of the state administrative law judge by blood or marriage, or a person treated by a judge as a member of the family, who resides in the household.

6. A state administrative law judge is not required by this Code to disclose income, debts or investments, except as provided by law.

7. Information acquired by state administrative law judges in their judicial capacity shall not be used or disclosed by the judge in financial dealings or for any other purpose not related to judicial duties.

E. FIDUCIARY ACTIVITIES.

A state administrative law judge shall not serve as an executor, administrator, trustee, guardian or other fiduciary if such service will interfere with the proper

performance of judicial duties or if it is likely that as a fiduciary the judge will be engaged in proceedings that would ordinarily come before the judge, or if the estate, trust or ward becomes involved in adversary proceedings in an agency in which the judge serves or one under its appellate jurisdiction. While acting as a fiduciary, a state administrative law judge is subject to the same restrictions on financial activities that apply to the judge in the judge's personal capacity.

F. ARBITRATION.

A state administrative law judge may act as an arbitrator or mediator if such activity does not affect the independent professional judgment of the administrative law judge or the conduct of his official duties. A state administrative law judge shall not be an arbitrator or mediator over a matter which the administrative law judge may later preside.

G. PRACTICE OF LAW.

A state administrative law judge may practice law if such activity would neither affect the independent professional judgment of the state administrative law judge nor the conduct of the judge's official duties. An attorney who is a state administrative law judge shall not accept the representation of a client who is a litigant before the tribunal for whom the state administrative law judge serves or if there is a likelihood that such person will appear before the judge. A state administrative law judge shall not practice law before the administrative tribunal for which the judge serves.

H. EXTRA-JUDICIAL APPOINTMENTS.

A state administrative law judge may accept appointment to a governmental committee, commission or other position that is concerned with issues of policy on matters which may come before the judge if such appointment neither affects the independent professional judgment of the state administrative law judge nor the conduct of the judge's official duties.

## CANON 6

### A State Administrative Law Judge Shall Limit Compensation Received for Quasi-Judicial and Extra-Judicial Activities

A state administrative law judge may receive compensation and reimbursement of expenses for the quasi-judicial and extra-judicial activities permitted by this Code, if the source of such payments does not give the appearance of influencing the judge in the judge's official duties or otherwise give the appearance of impropriety, subject to the following restrictions:

A. COMPENSATION.

Compensation should not exceed a reasonable amount nor should it exceed what a person who is not a state administrative law judge would receive for the same activity.

B. EXPENSE REIMBURSEMENT.

Expense reimbursement should be limited to the actual cost of travel, food and lodging reasonably incurred by the state administrative law judge and where appropriate to the occasion, by the judge's spouse or guest. Any payment in excess of such an amount is compensation.

## CANON 7

### A State Administrative Law Judge Shall Refrain from Political Activity Inappropriate to the Judicial Office

POLITICAL CONDUCT IN GENERAL.

1. A state administrative law judge shall not act as a leader or hold an office in a political organization or party, the principal purpose of which is to further the election or appointment of candidates to political office.

2. A state administrative law judge shall not solicit funds for or be compelled to pay an assessment to a political organization or candidate or purchase tickets for political dinners or other similar functions.

3. A state administrative law judge shall resign from judicial office when the judge becomes a candidate either in a party primary or in a partisan general election except that the judge may continue to hold office, while being a candidate for election to or serving as a delegate in a state constitutional convention, if otherwise permitted by law to do so.

4. A state administrative law judge should not engage in any other partisan political activity except with the intent to improve the law, the legal system or the administration of justice.

## CANON 8

### Compliance with the Code of Judicial Conduct for State Administrative Law Judges

Anyone employed by a state governmental agency or an instrumentality of a state or municipal corporation, who is empowered to preside over statutory or regulatory fact-finding hearings or appellate proceedings arising within, among or before public agencies, is a state administrative law judge for the purposes of this Code.

### EFFECTIVE DATE OF COMPLIANCE

A person to whom this Code becomes applicable should arrange his or her affairs as soon as reasonably possible to comply with it.

# EXHIBIT 2

## Department of Health & Human Services

TRACY S. GRUBER
*Executive Director*

NATE CHECKETTS
*Deputy Director*

### State of Utah

SPENCER J. COX
*Governor*

DEIDRE M. HENDERSON
*Lieutenant Governor*

DR. MICHELLE HOFMANN
*Executive Medical Director*

DAVID LITVACK
*Deputy Director*

NATE WINTERS
*Deputy Director*

June 28, 2023

Jennie Jonsson
195 North 1950 West
Salt Lake City, UT 84116

RE:    Separation from State Employment

Jennie:

I am writing to inform you that you have not passed your probationary employment period successfully and effective immediately you are being separated from state employment with the Department of Health and Human Services, Administrative Hearings. Your non-compliance with policies and standards related to performance and conduct contributed to this decision.

As a career service exempt employee and per Division of Human Resource Management Rule R477-11-2(1), you do not have the right to appeal this decision. Please coordinate with me the proper return of all department-owned equipment as you leave.

We wish you well in your future employment endeavors.

Respectfully,

*Eric Stott*

Eric Stott
Office Director

Distribution:    Personnel File
                   Supervisor
                   DHRM